[J-43-2024] [MO: Wecht, J.]

**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 16 MAP 2023 |
| | : | |
| Appellant | : | Appeal from the Order of the |
| | : | Cumberland County Court of |
| | : | Common Pleas, Criminal Division, at |
| v. | : | No. CP-21-CR-3121-2021 dated |
| | : | January 20, 2023 |
| | : | |
| LARRY WARDELL HUNTE, | : | ARGUED: May 15, 2024 |
| | : | |
| Appellee | : | |

**CONCURRING AND DISSENTING OPINION**

**JUSTICE MUNDY**                                                    **DECIDED: June 17, 2025**

I agree with Justice Brobson that "circumstances exist whereby [Section 3755(a)] can be applied in a constitutional manner." Conc. And Diss. Op. at 6. As Justice Brobson cogently explains, nothing in the statute "forecloses a situation where either law enforcement obtains a warrant before directing emergency room personnel to withdraw a person's blood or the Commonwealth later establishes by a preponderance of the evidence that the warrantless seizure of a person's blood fell within an exception to the warrant requirement – *e.g.*, consent or exigent circumstances." *Id.* As such, the statute is not facially unconstitutional and I, therefore, join Justice Brobson's Concurring and Dissenting Opinion, including his rejection of the Majority's reliance on *City of Los Angeles v. Patel*, 575 U.S. 409 (2015).

I write separately to highlight that acknowledging the situations where Section 37555(a) may be applied constitutionally, thus declining to find the statute facially unconstitutional, permits the Court to give full effect to Section 3755(b)'s immunity

provision. Through Section 3755(b) our General Assembly has clearly expressed its intent that medical personnel complying with requests from law enforcement to draw blood from suspected intoxicated drivers should enjoy immunity from civil and criminal liability. *See* 75 Pa.C.S. §3755(b). The Majority identifies absolutely nothing unconstitutional, facially or otherwise, with the General Assembly's grant of such immunity, but nonetheless affirms the trial court's finding that Section 3755(b) is unconstitutional. *See* Maj. Op. at 52-53. There is no reason the Court should strip this legislatively granted immunity from medical personnel in situations where Section 3755(a) can be applied constitutionally, such as when law enforcement obtains a warrant or an exception to the warrant requirement is later determined by a court to apply.

Even in instances where a court subsequently determines that the requested blood draw was unconstitutional, medical personnel are still entitled to civil and criminal immunity pursuant to Section 3755(b). Initially, immunity pursuant to the plain language of the statute is not contingent on any future judicial determination but is rather granted at the time of blood draw. *See* 75 Pa.C.S.§ 3755(b). Further, unnecessarily revoking the legislative grant of immunity by judicial fiat unfairly places medical personnel in the unavoidable position of complying with law enforcement's request for a blood draw or ignoring such a request out of self-interest. The General Assembly clearly intended to prevent medical personnel from being placed in such a position during a medical emergency, but today the Majority holds that it is the Court's prerogative to overrule that determination. Additionally, I echo Justice Brobson's concern that in the absence of Section 3755(b), "it is unclear how law enforcement, even with a warrant, could compel emergency room personnel to comply with a directive to draw a person's blood." Conc. & Diss. Op. (Brobson, J.) at 7.

The Majority flippantly dismisses these concerns by saying the General Assembly can just simply enact a new law that "would require hospital personnel to comply with a lawful law enforcement request for a blood draw and provide them with immunity accordingly, much the same as that provided in Section 3755(b)[.]"  Maj. Op. at 53 (footnote omitted).  The legislature should not have to enact a statute "much the same" as Section 3755(b), as it has already enacted Section 3755(b).  Additionally, the Majority would limit medical personnel's immunity on a determination that the blood draw request was lawful, *see id.,* but who would be making the determination of lawfulness?  Would immunity hinge on a future judicial determination in a suppression hearing of whether the blood draw violated a patient's Fourth Amendment right?  Through Section 3755(b) the General Assembly made clear the immunity attached at the moment of the blood draw but under the hypothetical new statute the Majority is requiring the legislature to enact, medical personnel would not know at the time of the blood draw if immunity attached but instead would be inclined to refuse the request in order to avoid any possible liability down the line.  That situation is completely avoidable as it is purely a creation of the Majority's decision to hold Section 3755(b) facially unconstitutional when nothing in the statute is constitutionally suspect.